We'll move to the second case, American Guarantee & Liability Insurance v. Liberty Surplus Insurance. Mr. Martin. Thank you, Your Honor. May it please the Court, Brian Martin on past Liberty Surplus Insurance Company. This is an insurance coverage case where an excess, a high-level excess carrier is asserting an equitable subrogation claim against a primary carrier, Liberty, for negligent failure to settle. I'll skip through the facts because I know you all are familiar with them, but the first issue, the first error of law that's important, is that in Georgia there are three requirements to a negligent failure to settle case. The first, which is set out in Delaney v. St. Paul, is that the insurer has to have a duty to settle. Now the error in this case is the Court did not follow the 2019 Georgia Supreme Court case, First Assurance v. Hughes from – let's see, I have the citation, but you all have that. In Hughes, the Georgia Supreme Court set out when the insurer's duty to settle first arises, and it's very precise. The Court said the insurer's duty to settle arises when the insured party presents a valid offer to settle within the carrier's policy limits. Now in this case, there was never an opportunity – actually, there was never a demand to settle within policy limits. The first offer in the case was actually made by the plaintiff in March of 2014 – excuse me, 2013. It was a $5 million demand, and it was made at a time when the defense counsel – the case was very new, a first mediation was coming, and the defense counsel evaluated the case for settlement at around $300,000, and no one in the case at that point thought that this case was worth $1 million, much less $5 million. After that settlement demand, there was never a settlement demand until after Liberty had actually tendered its $1 million in limits. Counsel, can I ask a question? Sorry, go ahead. Go ahead, Judge Rosenbaum. Thank you. My question for you is this. What about the $1 million to $3 million offer, I guess the high-low thing, which it appears from the record occurred before the maximum $1 million limit was offered by Liberty. Why wasn't that a settlement, or do I have my facts confused? I think you have the facts confused. There was never a specific one to three. There was a, basically, we'll go to three if you'll go to one. That wasn't a settlement offer. That was in the negotiations of trying to close the gap. That's not a, you pay this X dollars and we'll settle the case. So there's not a valid settlement demand. There was an attempt, basically a proposal, just like you do in negotiations all the time, where you say, if you will go there, I will go there. You couldn't accept that and settle the case. I'm sorry. Let me ask you a question, though. If you, wasn't there an offer to say that $1 million would be the low and $3 million would be the high, no matter what the outcome of the trial was? And so you could have capped the responsibility, the liability for the parties at $3 million by doing that. Well, Liberty couldn't do that on its own, because we only have $1 million in limits. So ACE, the first web- Which you never tendered. Which we actually did tender on. Even though, in July 2014, it knew that liability would most likely exceed that. Well, two answers to that, Your Honor. First, the standard for when a settlement arises is when there is a valid settlement offer within your policy limits. So first, there was never a settlement demand within our policy limits. We tendered our $1 million limits for purposes of settlement on the day before trial. Counsel, this is Robert Luck. I'm confused what you mean by demand. You keep using that language. What do you mean by demand? What under law does demand have to be? The demand as used both in Hughes and in Breitman is when the plaintiff says, I will settle the case for X. That's what they're calling a demand. Counsel, so I'm pointing to, and I think this is what Judge Rosenbaum is asking about. This is page 21 of the trial court's order under expanding the fact section. Quote, plaintiff's counsel responded with a high load demand of $800,000 to $8 million. And that was after the sentence, a few sentences after the one that I think Judge Rosenbaum was referring to, which is, it also notes that Liberty responded to plaintiff's counsel's bracket of $1 million to $3 million. And that was on, I believe, December 9th of 2014. Once again, Your Honor, those are high loads that could not have been entered into without Ace being willing to participate in those offers. You agree with me those are demands, right? Your Honor, I would treat those as settlement offers. I don't think the case law treats that as a valid demand as it is used in Hughes. The trial court specifically used the word demand. The sentence reads, quote, plaintiff's counsel responded with a high load demand of $800,000 to $8 million. How is that not a demand? Your Honor, that's not what actually – in the terms of negotiation between the parties, there's never an opportunity at that point in time, using the limits of the Liberty policy to settle the case. There are high loads – Let me stop you there for a second. Because you said that there has to be an offer within your terms. That's correct. That's what the Supreme Court said. I disagree. I think what the Supreme Court said is there has to be an offer within the I think you have to look at all of the offers or all of the whole tower of insurance there. And the offers were within that. And that's what triggers your requirement to put up your million dollar limit. Because otherwise, there would never be any requirement for you to settle in a case that exceeded your limit. I mean, when there's other insurance available. And so you'd never get to the second layer and the third layer of insurers. That doesn't seem to make a lot of sense to me. Well, Your Honor, the whole purpose of having an actual settlement offer that's a valid settlement offer for an amount that you can accept or not accept is the very fundamental insurance issue that that's what you created. Is this an offer or a demand? You've been trying to make some distinction now you're calling it an offer. Well, Your Honor, a settlement demand can be an offer. It's basically all the contract terms we use all the time that a plaintiff can demand or offer to settle. And then the insurance carrier can accept or not accept the offer. We can call it one or the other. And you're right. The court calls the high lows demands. I'm saying that in Hughes and in Brightman, that's not how they're using it. But if I may just really quickly touch upon two other errors of the law. Well, counsel, if I can go back, I want to look at page 18 of the trial court's findings of fact. This is related to the November 12, 2014 conversation. And there the trial court found that plaintiff's counsel again offered to bring his demand down to $3 million if the insurers put $1 million on the table and note that there's a strong indication that $2 million will get it done. Is that not also an offer in demand under the case law? Well, I don't think a strong indication of settlement is an offer. I think it has to be an act where we will settle if you pay me X. It said the demand is to the $3 million. That was a demand, right? The demand is to the $3 million took place on the first day of trial. And that's after we had tendered our limits on the day before trial. Counsel, I'm looking at page 18 of the trial court's order on the November 12, 2014 defense email. Your Honor, at that point in time in 2014, defense counsel was still advising us. And I think the record still shows that. And the trial record also shows that the defense counsel was not valuing this case as above $1 million. That might go to liability, but that's separate from the argument you're making of there was no demand. There certainly was a demand for an excess of the $1 million, right? Your Honor, as you all are framing this, yes. But if I may, I have two arguments I would like to make very quickly. Two minutes remaining. Two minutes. Oh, thank you. The second is with respect to damages. The third element is there has to be bad faith damage. There has to be damages to the insured by the actions of AIDS. They cause proximate damage to this insured. This insured was defended by Liberty throughout, and all defense costs are paid, so there's no attorney fees claim. Liberty did not create an excess judgment that had to be dealt with by the insured because the judgment was $25 million, and as the court noted, all the insurance involved is $33 million. So it was never excess judgment that the insured faced. They never suffered any danger there. Then the case settled for $15 million, which all the carriers, the four lower-level carriers paid $13 million, and $2 million was paid by American Guarantee. So there was never any harm as that's used for the third element that would allow recovery because the insured was never put in danger in any way. By the same token, the measure of damages has to be a bad faith type damage, and in this case, the court granted a contract damage. The actual insurance process, the insurance limits that were available to American Guarantee  So it was a contract measure of damages. It wasn't bad faith damages, so there was no basis for that. Finally, the Breitman test. In this case, we were entitled to a safe harbor. Oh, I'm sorry. I've passed my time. I apologize. Oh, that's all right. My remainder. Yeah, you have four minutes for rebuttal. Mr. Schatz? Good morning. This is Steve Schatz for American Guarantee and Liability Company. May it please the court. I just want to make clear from the beginning that under no circumstances is American Guarantee trying to create any new law or change existing law. What American Guarantee is doing is showing that it properly presented sufficient evidence to the finder of fact that for this particular claim, the facts support its findings within the existing law, and that existing law is a two-step process. First is whether there is a... Counsel, can you address that last point for me, the damages point? Because as I understand the equitable segregation claim, the excess insurer stands in the shoes of the insured, and the question is whether the insured was harmed by the negligence of the primary carrier. Sure. And here, as counsel points out, there was a settlement for within all of the insurance limits, and no one was held, and the insured was not held responsible for anything. What are the damages? So you first look to the damages to the insured, but the cases that apply equitable segregation do not require that there first be any sort of judgment that is uninsured that the insured has to come out of pocket. Equitable segregation is a legal vehicle that allows an excess carrier to stand in the shoes of the insured, even though the insured has not suffered any damages itself, and recover and have a recourse against a primary carrier. So in the Evanston Insurance Company v. Stonewall Surplus Lines case, the 11th Circuit supports that an excess insurer can use equitable segregation to recover against the primary. There is nothing in that case that stands for the proposition that the insured must first suffer damages through a judgment. There is no equitable segregation interpreting Georgia law that requires such a condition. In fact, the Home Insurance Company v. North River Insurance Company case, which Evanston relies upon, the excess carrier paid the verdict and then sought equitable segregation against the primary. So the cases that Liberty has relied on are for the proposition that involve a single insurer allowing an excess judgment to be taken against its insured. And they don't involve this case, which is multiple insurers with multiple layers of vertical coverage. And I think the Home Insurance Company case, the court said, placing the excess insurer in the shoes of the insured advances the public interest in obtaining prompt and just settlement of claims. The existence of excess or umbrella coverage must not relieve the primary insurer of its responsibility to accept reasonable settlement offers less than those situations where a claim exceeds the amount of primary coverage. The primary insurer is encouraged to attempt to place its financial burden upon the excess insurer. So that's the whole point of the equitable segregation is to allow this exact type of recovery by an excess carrier. Going back to, I think there's a two-step process that needs to take place in these situations where there is a vertical tower of multiple layers of coverage. And the first step is, is there a valid offer within the limits under Hughes? And then the second step is, if there was, did the primary take the Brightman Safe Harbor? And in this case, there was plenty of evidence supporting the court's decision that there was, in fact, offers by the plaintiff that said, listen, I'm not going to settle this case unless Liberty first puts in its $1 million. Which it never did. Which it never did. All Liberty can do is control its limits with its insured. What ACE did or didn't do doesn't matter. But with respect to... Let me ask you a question about that. Okay. What specifically do you rely on as the settlement offer? Which date and which amount? Okay. So I think you have to look at the context of all from the moment that the plaintiff made a demand for $5 million. That whole demand back in April of 2013 specifically delineated $1 million from Liberty Mutual. And from that moment on, the plaintiff consistently said, and it was reported by Liberty's defense counsel, that basically, I'm not going to do anything until that million dollars is on the table. So once – that was very clear in these negotiations and in the reporting to Liberty. And so once Liberty realized that the likely verdict was going to be over $1 million, over its policy limits, at that point, it had an open, valid offer to tender its limits and should have taken the safe harbor under Brightman at that time. And it knew that that excess verdict was likely at least by July 2014? That is correct. That is when defense counsel first reported that the defenses are not going to be that strong. And we estimated the verdict to be between $1.25 and $1.5 million. So once that happened, then they should have – I'm sorry. What was the specific settlement offer that was outstanding, the date of it and the amount? So I think – was there anything in writing that said, I need – you have to give me $1 million? Nothing other than the original Holt demand, but the reporting – first of all, Hughes does not require any sort of writing. I think Hughes doesn't call it a demand. It calls it a valid offer to settle. Can you give the specific date of when that occurred? So the Holt demand was on April 26. And then in October, there was communications. I'll go to $3 million if you just put up that million. And defense counsel reported that he's hung up with any further offers or discounts because he wants to first get the $1 million tender. And so that continued on in November of 2014, December of 2014. And he kept saying, in fact, that December 9, 2014, Ace Claim Notes indicate that Liberty responded to plaintiff's $1 million, $3 million bracket with a $400,000, $900,000 bracket. So it was clear to Liberty that in all these communications, the plaintiff was not going to settle until it at least got the million dollars. So it's within that context that there was a – that the trial court judge found there to be a legitimate, valid offer within Liberty's own limits… I'm still a little confused, and I apologize. But was – so there wasn't going to be a settlement for $1 million if Liberty put up $1 million. But they wouldn't get an offer for anything beyond that if Liberty didn't put up $1 million, right? Correct. And Liberty can only… Okay, so how is that a settlement? I'm sorry. How is that a settlement offer? Because Liberty can only control what it can control, and that's its own limits. And knowing that… But there's not a settlement offer within the insured's insurance limit. There is within the insured's limits with Liberty, and that's the key, is that – and that's what really the purpose of Brightman is that if you've got multiple insurers and that there is an offer that exceeds your limits for a global settlement with other insurers, you have to control your own limits. I totally agree with that, but my problem that I'm having is that I don't know what the settlement number is. I understand that you're saying it was a precondition for there to be a settlement offer, but even if Liberty had offered $1 million, we don't know for sure that there would have been a forthcoming settlement offer. And if there had been, we don't know what it would have been for. So it seems like I'm not really sure there was a settlement offer there. I mean, let me ask you something. What was the first time that there was a firm settlement offer before Liberty offered its limits? Well, it was the $5 million Holt demand and then the communications after that from plaintiff's counsel that I will go to three if you will go to one. And so that was in December 9, 2014. ACE makes that claim. So you're saying that was a $3 million settlement demand? Global settlement, yes. But to settle the entire case, they would have to come to $3 million and Liberty would not contribute that $1 million to get to that total amount. Okay, let me ask you another question. Opposing counsel says that the $1 to $3 million high-low cannot serve as a settlement offer. What is your position on that? I think what a valid settlement offer is depends on the context of the case. And in this case, because there was a million dollars at the base, at the low, that can be interpreted and was correctly interpreted by the court as a valid offer to Liberty to at least put its limits toward it. And then what ACE did afterwards, that was up to ACE, but Liberty controlled its own limits with the insurer. Okay, so I understand that your position is it doesn't really matter what was offered to settle the rest of the case because it was offered to Liberty just within Liberty's limits to settle for a million dollars. Correct. But I'm asking, let's just assume for a moment that the question is whether it's within the insured's limits regarding all of the insurance that the insured has. Was the $1 to $3 million a valid settlement offer? In other words, we'll seal your liability at $3 million if you'll give us a floor of a million dollars, and then we'll go to trial and we'll see what happens. And the worst you can have is $3 million, and the worst we can have is $1 million. Is that a valid settlement offer of the global settlement, of the global, I guess, claim? I think it is a valid settlement offer, and that Liberty recognized it as such by responding to it with a counteroffer of $400,000, $900,000 bracket. But is that duty really defined by the amount that it's going to take to settle the case globally? Because if it is, it seems like it would be really hard for the duty to ever be triggered on the part of the primary carrier. I agree. And so that's really, going back to Brightman, that really was the whole purpose. You can't worry about what the other insurers are going to do. You have to focus on your obligation to the insured. And once you realize, or once there is a valid offer, and you realize that it is likely that the verdict will exceed the amount of your limits, that is when your duty kicks in to take the safe harbor. Okay, Mr. Schatz, do you have anything else for us? I just wanted to add one. I think I'll relinquish my time, and thank you very much. Thank you. Mr. Martin, you have four minutes for rebuttal. Thank you, Your Honor. With respect to the equitable subrogation point, Stonewall makes it very clear that it can only prevail on the claims and the damages that the insured have. That's actually talked about too in Delaney v. St. Paul, where it says, we assume the insured must show that it has suffered actual injury possibly caused by the insured's failure to settle. So as a practical matter in this context, there are no damages based upon the acts of liberty. And there's nothing in the record that shows any specific acts that are frankly anything other than contract damages. And in fact, in the court's own order, it specifically says that it is awarding the $2 million because those are the amounts that were contributed to the case by American Guarantee. Counsel, is your opposing counsel correct that there are other cases both out of the 11th Circuit and the Georgia courts that have awarded the damages even though the ultimate settlement amount or the ultimate amount was within the global insurance carriage? In other words, assuming that there's $30 million worth of coverage, the settlement or the verdict was within the global insurance amount? No, sir. I mean, well, there are cases where there is evidence of damage. For instance, there's mental distress found in a couple of those circumstances. But nowhere where there is no excess judgment as there was not here without some evidence in the record of a specific harm. In this case, the only – But what about your opposing counsel's point that we wouldn't have – and what the trial court says is we wouldn't have been on the hook for that amount if you had taken the $30 million or $5 million offer? Well, but there's no evidence of that. That's purely speculative, and it is especially for this reason. Let me ask this. Would that be sufficient damage? Let's assume for the moment there is evidence of it. Would that be sufficient damages under an equitable subrogation claim? The answer is yes. No, because those are contract damages, not bad faith damages, not something outside the scope of their insurance obligations. They negotiated that settlement. They're all the carriers that tendered their limits to American Guarantee. They then went and negotiated a deal. They settled it, and so they basically created their own contract damages. They can do it if there was some type of contractual privity, but there's not. Counsel, isn't the fiction, though, that it's the insured that is paying that amount through their insurance companies? In other words, the insured would have only had to pay $3 million or $5 million and not $15 million. Isn't that the fiction that we go under for an equitable subrogation claim? But that would still be a contract claim. That would have been a settlement they would have paid that's not being paid because they have a contract with this carrier to pay their claims. They're paying indemnity. Yes, they're paying on behalf of the insured, but that's exactly contract. Counsel, isn't that still negligence, though? In other words, only because of the negligence of the primary carrier and the unwillingness to put up the money, we now had to pay more money than we otherwise would have. That's a negligence-bad-faith claim, right? I don't think so in this context. If I may, though, Your Honor, there's something I just want to point out very quickly. I understand that, but I want you to – my questions are important for me to be able to decide the case. I understand. I don't want to cut you off. Your Honor, no. And with the chief's permission, counsel, with the chief's permission, I'll give you some extra time. Thank you very much. Well, I'll tell you what we want. I want an answer to Judge Luck's question. You're over your time. I want you to answer his question, and then we'll give you 15 seconds to wrap up. Thank you, Your Honor. The only non-contract – no. The answer is that is a contract measure of damages, whereas the court talked about on page 33 and 34 of the order that there may have been some type of damage in the sense that by having to pay more that there would be less coverage available for a future claim. But that's the only reference the court makes to any type of bad faith type damage as opposed to a contract damage. In the 15 seconds I'll point out, there were three specific settlement demands that Ace refused during trial, $3 million, $5 million, and $11 million that were within their limits. So even when they had the opportunity to settle within their limits, they chose not to. So there's no reason to believe that the year before, they would have put up money when they weren't willing to, even at trial. Okay. Thank you, Mr. Martin. We have your case, and we'll move on to the last one for today.